17514

ST. PAUL MERCURY INDEMNITY COMPANY, Respondent, v. PALMETTO QUARRIES COMPANY, Appellant

(107 S. E. (2d) 453)

*Messrs. Herbert & Dial,* of Columbia, *for Appellant.*

*Messrs. Herbert & Dial,* of Columbia, *for Appellant, in Reply.*

March 10, 1959.

OXNER, Justice.

This action was brought by St. Paul Mercury Indemnity Company, hereinafter referred to as St. Paul, against Palmetto Quarries Company, hereinafter referred to as Palmetto, to recover the sum of $1,630.90 representing balance due for insurance premiums on an employer's liability policy for the year 1952. Palmetto admitted this indebtedness and interposed two counterclaims, the first in tort and the second in contract.

By consent of the parties, the case was referred to the Master for Richland County who heard it upon a stipulation as to some of the facts and testimony offered by the parties as to other facts. He concluded that Palmetto was entitled to recover the sum of $4,625.00 on the counterclaim in tort but was not entitled to recover on the counterclaim

in contract. On exceptions by both parties to the Master's report, the case was heard in due course by the presiding Judge of the Court of Common Pleas. He held that Palmetto was not entitled to recover on either counterclaim and awarded judgment in favor of St. Paul for the sum of $1,-630.90 with interest.

Palmetto has abandoned the counterclaim in contract and appeals solely from that portion of the order of the Circuit Court denying recovery on the counterclaim in tort. Briefly stated, Palmetto alleged in the tort counterclaim that, although its business was excepted from and it had not elected to come under the Workmen's Compensation Act, Code 1952, § 72-1 *et seq.*, St. Paul, with whom it had carried its liability insurance for a number of years, through the negligent handling of its insurance coverage caused the Industrial Commission to take the position that Palmetto had elected to come under the terms of the Act, and as a result of the "precarious situation" in which it had been placed by St. Paul, it was forced to settle a claim filed under the Workmen's Compensation Act by one of its employees by paying the sum of $3,500.00 and lost wages, for which reimbursement was refused by St. Paul.

The facts with reference to this counterclaim were found by the Circuit Judge to be as follows:

"From about the middle of 1946 through 1952, St. Paul insured the possible common law liability of Palmetto to its employees by a number of successive annual (after the first) Employers' Liability Policies or contracts of insurance. These successive annual insurance contracts afforded Palmetto substantially the same protection, although certain terms and conditions of the policies varied from year to year. The policies were issued to Palmetto at a reduced premium rate by reason of the fact that it assumed liability for the payment of the first $1,000.00 of each claim, with St. Paul's liability being the excess over $1,000.00 of each claim up to the policy limits. These policies covered the quarry operations of Palmetto, and contained the provision that said

Employer was conducting no other business operations at the described location or any other location not disclosed in the policy.

"By the South Carolina Workmen's Compensation Law, stone quarries were and are exempt from the mandatory coverage thereof, and Palmetto had not elected to come under its provisions at the time the events upon which the first counterclaim is based occurred; although, at that time, in conjunction with its stone quarry operations Palmetto was also operating a concrete products plant, which latter operation in itself was not exempt from the mandatory coverage of said Workmen's Compensation Law.

"St. Paul has never written any Workmen's Compensation insurance coverage for Palmetto, and Palmetto has never applied to St. Paul for such coverage or paid any premium for that type of insurance. Through mistake, however, St Paul filed with the South Carolina Industrial Commission Reports of Coverage, generally referred to as 'A' Cards, on four occasions—in 1946, in 1947, in 1948, and a final one on December 8, 1951. These 'A' Cards indicated to the Industrial Commission that the quarry operations of Palmetto were covered by St. Paul with Workmen's Compensation insurance.

"In 1946 E. C. Mills, an employee of Palmetto, filed a claim against that company, as employer, under the Workmen's Compensation Law, at which time Palmetto had not elected to come under that law and had no workmen's compensation insurance, but at which time St. Paul, through error on its part, had indicated by filing an 'A' Card, that such insurance, covering Palmetto's operations, was in force. Both Palmetto and St. Paul agreed that there was probable liability to Mills * * * at common law, and St. Paul settled Mills' claim for $2,475.90 and obtained a release from him on the Industrial Commission's form, a copy of which was filed with that Commission. Palmetto paid $1,000.00 of this settlement, and St. Paul paid the remainder, $1,475.90, as provided in the employers' liability policy.

"St. Paul by mistake again filed 'A' Cards with the Industrial Commission in 1947 and 1948, but none were filed thereafter until December 8, 1951.

"On December 19, 1951, Olin K. Garvin, an employee of Palmetto, was injured while at work in the stone quarry. Thereafter he employed an attorney to represent him, and this attorney filed a claim with the Industrial Commission against Palmetto, as employer, and St. Paul, as carrier, upon the information and theory that Garvin was working in covered employment at the time he was injured. Upon receipt of notice of the filing of this claim, Palmetto requested St. Paul to dispose of it without hearing before the Industrial Commission, since Palmetto did not want it handled as a workmen's compensation case. St. Paul refused to pay such amount as might be necessary to effect a settlement of Garvin's claim, but offered to defend against this claim before the Industrial Commission on the ground that the quarry operation was exempt from mandatory coverage under the law, and that there was no workmen's compensation insurance covering same. St. Paul further offered to pay any judgment that might result against Palmetto from this claim, if it should be found that the filing of the 'A' Card through error had extended the coverage of the Employer's Liability policy. Palmetto, however, refused to permit St. Paul to oppose Garvin's claim, and ultimately entered into an agreement with his attorney whereby the claim was withdrawn from the Industrial Commission and a common law action, based on it, was brought against Palmetto, by agreeing to pay the sum of $3,500.00 to Garvin in settlement of the common law action. This was done, and the settlement was concluded·on that basis. When the claim was withdrawn as being under the Workmen's Compensation Law, and the common law action was instituted, St. Paul offered to defend against the latter by reason of its Employers' Liability coverage; but, of course, under its agreement with Garvin's attorney, Palmetto had to settle it by paying the sum of $3,500.00.

"St. Paul declined to contribute to this settlement, but stood on its offer to oppose the claim before the Industrial Commission and to defend against the subsequent common law action, and to pay any judgment resulting therefrom. These offers were declined by Palmetto * * *."

In holding that the foregoing facts created no liability on the part of St. Paul, the Circuit Judge said:

"Actually, the primary or proximate cause of the dilemma in which Palmetto found itself was not the erroneous filing of the "A." Card with the Industrial Commission by St. Paul, but was the action of Palmetto itself in extending and enlarging its operations to other activities than the operation of the stone quarry, without determining whether or not these extended and enlarged activities brought its business under the mandatory coverage of the Workmen's Compensation Law, and in its failure to comply with said Law if these extended activities required it to operate thereunder.

"In support of its position that the erroneous filing of the "A" Card with the Industrial Commission did not bring the Garvin claim under the Workmen's Compensation Law, and that St. Paul had a reasonable belief that it could successfully resist said claim on behalf of Palmetto, counsel for St. Paul have cited * * * (citations omitted). But the merit or lack of merit of the defense or defenses which St. Paul expected and desired to interpose to the Garvin claim is beside the point—it was not permitted to defend. And Palmetto's refusal to permit St. Paul to defend was not by reason of any fear which it had as to the ultimate adjudication of Garvin's claim, but because it was fearful of the result of an investigation of the nature, extent and scope of the activities in which it was engaged. If these activities were such as to bring Palmetto's business under the mandatory provisions of the Workmen's Compensation Law, then its operation outside said Law was a non-compliance, and it should have been made to comply. And if it was not subject to the coverage of said Law, except on a voluntary basis, then its failure to comply with said Law was perfectly legal and valid,

and it could neither be made to comply nor subjected to penalties for non-compliance. Palmetto was fully acquainted with the nature and extent of the activities in which it was engaged, and certainly was and is charged with knowledge of the law. If it took the risk of operating outside said Law when its operations should have been covered by it, St. Paul owed Palmetto no duty to protect it from the consequences of its so doing. But this is exactly what Palmetto demanded of St. Paul, and the refusal of the latter to comply with such demand constituted no breach of duty which St. Paul owed Palmetto.

"In finding that Palmetto should recover of St. Paul on its first counterclaim, the Master in Equity holds that the erroneous or negligent filing of the 'A' Card by St. Paul placed Palmetto in a predicament in which it would not otherwise have been, and that Palmetto should not have been required to follow the hazardous course which St. Paul desired of defending against the Garvin claim. In so finding, the Master overlooked entirely the fact that it was not the filing of the 'A' Card which placed Palmetto in the 'predicament', and made the defense of the Garvin claim before the Industrial Commission hazardous to Palmetto; but, on the contrary, it was the acts of Palmetto in extending its quarry operations and engaging in making bricks or concrete products of some sort, without having an official determination as to whether or not this put its business under the mandatory coverage of the Workmen's Compensation Law that caused the predicament and created the hazard. The latter was the primary or proximate cause of Palmetto's predicament; at most, the filing of the 'A' Card by St. Paul was a remote or indirect cause.

"It is uncontradicted that St. Paul offered to defend against, and pay any judgment resulting from, the claim which its filing of the 'A' Card may have created, but it was not allowed to do this. It owed no duty to Palmetto to protect the latter from an investigation of the nature and extent of its business activities and operations."

The record fully sustains the facts found by the Circuit Judge and we think his legal conclusion from these facts is sound.

It may be conceded that the action of St. Paul led the Industrial Commission to take the position that Palmetto had elected to come under the Act and caused Garvin to seek Workmen's Compensation rather than bring a common law action. But it is difficult to see how this could have caused any loss to Palmetto in view of the willingness of St. Paul to pay any recovery by Garvin resulting from its mistakes. It offered to defend his claim before the Industrial Commission and should it be decided that its mistakes brought Palmetto under the Act, to pay any award that might be made to Garvin. It further offered to defend any common law action brought by Garvin. In short, St. Paul was willing to take the consequence of its mistakes but Palmetto would not permit a legal adjudication of what those consequences were.

Palmetto argues that St. Paul only offered to defend the Garvin claim before the Industrial Commission after it had reached a settlement with Garvin's attorney and that even then, its offer was a limited one and not as broad as stated by the Circuit Judge. There is some conflict in the evidence on these points but this being a law case, we are not at liberty to review disputed issues of fact.

It is asserted, and it was so stipulated, that it was "essential" to Palmetto "that the Garvin claim not be disposed of under the Workmen's Compensation Act" because of a possible finding that Palmetto was operating under the Act without having complied with its provisions, thereby subjecting it to heavy penalties. It is stated in Palmetto's brief that Garvin's attorney was contending that it was under the Act not only because of the filing of the "A" cards by St. Paul but also because its concrete products plant operated in conjunction with the stone quarry, placed it, as a matter of law, under the mandatory provisions of the Compensation Law. But St. Paul could only be held responsible for the re-

:sults of its mistakes and not for any penalties imposed on Palmetto in the event it was determined that the concrete "products business automatically placed it under the Com-;pensation Law.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.